## BARNETT *v.* STATE

No. 40688          December 2, 1957          98 So. 2d 656

*McFarland & McFarland,* Bay Springs, for appellant.

*J. R. Griffin, Asst. Atty. Gen.,* Jackson, for appellee.

LEE, J.

Willie Lee Barnett, indicted for the murder of Sam Gordon, was convicted by the jury of manslaughter, and was sentenced to serve a term of 20 years in the state penitentiary. From the judgment entered, he appealed.

The shooting occurred on Saturday night, June 30, 1956, at the Silver Moon, a cafe and dance hall for colored people, about 3 miles from Vossburg in Jasper County. Death from the wound resulted about two weeks later. Sam Gordon, Ruthie Mae Satcher and two other Negro couples, from Clarke County, went to the cafe in one car. None of them knew Willie Lee Barnett. There were two distinct versions as to how this shooting occurred.

Ruthie Mae Satcher testified that, during the evening, Barnett came to her, caught her arm, and asked if he knew her. She replied "No". Sometime later, Sam Gordon said to her "Lets dance", and they began dancing. In a minute or two, the defendant came up and grabbed her by the right wrist. She jerked loose and he slapped

her in the face. Immediately he backed up and fired a shot between her and Sam so close that the powder burned her arm. Sam, backing away, picked up a chair to keep the bullets off. Barnett fired two other shots, one of which hit Sam in the stomach. On cross examination, she denied that she slapped Barnett, that Sam tried to hit Barnett with a chair, and that Sam tried to pull a gun. She said that the only reason she could give for Barnett's shooting Sam was that he was dancing with her and she would not dance with Barnett.

Mamie Parker testified that Ruthie Mae Satcher at one time told Barnett to go and find him a playmate, that she was not his playmate. She, Bernice Gordon, Clifton Parker, W. M. Magee and Leroy Yates all gave corroboration to Ruthie Mae's version and affirmed that Sam Gordon had no weapon of any kind and committed no act of aggression against Barnett.

On the contrary, the defendant testified that he asked the Satcher woman to dance with him and she refused. Later he saw her dancing with another woman, and he went up to her, caught her hand and asked her for a dance. She slapped him, and he in turn slapped her, but not hard. Then Sam Gordon grabbed a chair and struck at him. However, he took the chair away from Sam and set it down. Sam then began fumbling at his shirt; and when he saw him about to pull a pistol from his bosom, the defendant shot in self defense. His explanation as to why he had the pistol on his person was that he had stepped on someone's toes that evening, and out of fear, he went home, got his pistol, left his wife and five children there, and returned to the cafe to be with his friends. He was corroborated in his version of the shooting by four other witnesses.

■■ With these two versions, in sharp dispute, manifestly the learned trial judge committed no error in refusing the defendant's requested peremptory instruction; nor was the court in error in refusing to grant a

new trial on the ground that the verdict of the jury was contrary to the great weight of the evidence.

The appellant also contends that it was error for the court to give an instruction to the State which defined the crime of manslaughter. It was a stereotyped instruction, and he does not argue that it was erroneous in form. He maintains that he did not know Gordon previously; that he had no motive for killing him; that he could not have been guilty of murder; and that this instruction afforded the jury an excuse to compromise on the verdict.

■■ ■ In the first place, proof of motive is not essential to a conviction for felonious homicide. Swanson v. State, 218 Miss. 103, 65 So. 2d 232. ■■ ■ But the jury would have been fully warranted in believing that the appellant was motivated by jealousy or envy because his advances were spurned and Ruthie Mae danced with Sam rather than with him. A full acceptance of the version of the State witnesses, would have sustained a finding that the defendant was guilty of murder. On the contrary, there was evidence to justify a finding that he shot in the heat of passion. The jury evidently so found and reduced the grade of the homicide to manslaughter. But clearly the instructions, both as to murder and manslaughter, were proper. ■■■ Besides this Court has repeatedly held that a defendant, who has been convicted of manslaughter, may not complain at the giving of a murder instruction. See Denham v. State, 218 Miss. 423, 67 So. 2d 445, and the cases there cited.

No reversible error appears in the record and the cause is affirmed.

Affirmed.

*McGehee, C. J.,* and *Arrington, Ethridge* and *Gillespie, JJ.,* concur.